UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION at ASHLAND

CIVIL ACTION NO. 05-70-EBA

DANIEL BOONE LUMBER CO., INC.,                                    PLAINTIFF,


V.                          **MEMORANDUM OPINION AND ORDER**


JONATHAN NABORS, d/b/a EMPLOYERS
UNDERWRITERS COMMERCIAL INS.                          DEFENDANT.

* * * * *

INTRODUCTION

In the early morning hours of December 11, 2004, the Plaintiff suffered a fire to its facilities. [Record No. 1.] It is undisputed that at the time of the fire, the property was not covered for loss by fire.  As a result, the Plaintiff instituted this action seeking damages and alleging that the Defendants were negligent in "failing to notify the Plaintiff of the premium due . . ." on the premises and "but for this negligence, Plaintiff would have had a general liability insurance policy in place on the date of the fire." [Record No. 1.]


FACTUAL BACKGROUND

The Plaintiff was a business engaged in reconditioning wooden pallets. [Lincoln Depo. pp. 12-13. ]  Prior to the loss, the Plaintiff completed an application for insurance coverage with Employers Underwriters Commercial Insurance, a company owned by the Defendant, Jonathan Nabors. [Defendants.]  Nabors forwarded the application for coverage to Risk Placement Services [RPS], a commercial insurance broker, which secured a policy of insurance through Western Heritage Insurance Company. [Western.]  That policy, by its terms, was to expire on November 23,

2004.

The Plaintiff and the Defendants had an ongoing business relationship for nearly twenty years prior to the fire loss. [Nabors Depo. p. 26.] In the course of this relationship, RPS would issue a renewal quotation for renewal of commercial insurance and mail it directly to Nabors, quoting a price to continue the policy for the Plaintiff. [Jackson Depo. p. 9.] It was not the business practice of RPS to forward this renewal notice directly to the insured, Daniel Boone Lumber. [Jackson Depo. p.9, 10.] Rather, it was the responsibility of the agent, Nabors, to forward the renewal quotation to the insured, which normally occurred within a week or two of receipt in his office. [Nabors Depo. p. 54.] Nabors testified in this matter that he received the renewal notice from RPS, and sent it to Daniel Boone Lumber on or about November 11, 2004. [Nabors Depo. p. 22.] Although he has no actual proof of mailing, Nabors testified that it is his customary business practice to mail a renewal proposal on the day it is prepared for the insured in his office. [Nabors Depo. p.42.]

On December 7, 2004, Nabors called the Plaintiff's office and spoke with Michael Coburn, an office manager, to ask where the Plaintiff had placed its insurance. [Nabors Depo. p. 66.] Nabors contends that Coburn related not having seen the renewal offer, but stated that Gail Lincoln, the president of Daniel Boone Lumber, may have had the offer at home or in her car. [Nabors Depo. p. 66.] Coburn relates that he asked Nabors to bind the coverage, but that Nabors asked for Lincoln to give him a call. [Coburn Depo. pp.32, 35-36.]

On December 8, 2004, Lincoln called Nabors, to discuss the insurance policy. [Lincoln Depo. p. 54.] She related to Nabors that she had not seen, and did not receive the renewal offer. She asked him to fax it, saying she needed to review the offer. [Lincoln Depo. p. 54, 57 .] Lincoln contends that the offer did not come over the fax on December 8 until some time after 3:00 p.m.,

when Coburn left the office. [Lincoln Depo. P. 58.] However, the fax transmission sheet from Nabors office reflects a time of just before 1:00 p.m.

Lincoln attempted to call Nabors at his office on December 9, and 10, but that Nabors was out of the office due to a back injury. [Lincoln Depo. 59 ; Nabors Depo. P. 81-82.] She testified that on the afternoon of December 10, she attempted to fax Nabors a request to bind the coverage. [Lincoln Depo. P. 60.] However, Nabors testified that such a fax was not received in his office. [Nabors Depo. P.32.] Lincoln placed a check dated December 10, 2004, for the renewal premium in the Plaintiff's rural mail box for pick up by the mail carrier. [Lincoln Depo. P. 63.] In the early hours of December 11, 2004, the Plaintiff's facility burned.  However, the correspondence containing the renewal premium was not postmarked until December 11, 2004, after the fire had destroyed the plaintiff's facility.

Nabors testified in this matter that had he received instructions from Lincoln prior to the date of renewal to bind the coverage, it would have been in effect the day following her instructions. [Nabors Depo. p.26-27.] Once the renewal date had passed, Fred Jackson, with RPS, testified that since the policy had already lapsed, before new coverage would be placed, the plaintiff would have been required to complete a new application for consideration. [Jackson Depo. p. 11.]

Following the fire loss, the plaintiff and defendant made attempts to secure insurance for the loss, but were unsuccessful.  This action for the alleged negligence of Nabors, for failing to properly notify Daniel Boone of the renewal offer, followed.

This matter is now before the Court on motion of the Defendant, Jonathan Nabors, d/b/a Employers Underwriters Commercial Ins., for summary judgment. [Record No. 21.]   The Plaintiff, Daniel Boone Lumber Co., Inc., filed a response to the motion on January 2, 2007. [Record No. 23.]

The matter being fully briefed, it is ripe for review.


## STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

When the moving party has carried its burden under Rule 56(c), its opponent must "do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  While the court must view all facts in the light most favorable to the non-moving party and give him or her the benefit of all reasonable inferences that can be drawn from the facts, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), the non-moving party cannot avoid summary judgment merely by resting on the pleadings, see Celotex, 477 U.S. at 324. Instead, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial."  Matsushita, 475 U.S. at 587.


## ANALYSIS

The Defendants herein have moved for summary judgment, arguing: 1) that the Defendant, Jonathan Nabors [Nabors] did not breach a duty to the Plaintiff; 2) that according to the mailbox

rule, upon mailing by Nabors, a presumption arose that the offer of renewal of the policy was received by the Plaintiff within the time required to renew; and 3) that the Plaintiff cannot prove Defendants' negligence without the aid of expert testimony, as the issue of negligence is not so apparent that a lay person with general knowledge would recognize its existence. [Record No. 21.] For the reasons stated herein, the Court finds that a genuine issue of material fact exists, and the Defendants' motion for summary judgment will be denied.

For the Plaintiff to sustain a claim for negligence, Kentucky law requires a showing of three elements: duty, breach and consequent injury.  In general, Kentucky has adopted a "universal duty of care" standard which requires every person to exercise ordinary care in his activities to prevent foreseeable injury. T & M Jewelry, Inc., d/b/a the Castle v. Hicks, 189 S.W.3d 526, 529 (Ky. 2006). "Ordinary care is the same degree of care as a prudent person engaged in a similar or like business would exercise under the circumstances." Id.

In the instant action, the record establishes that by course of conduct, Nabors assumed a duty to inform the plaintiff of the renewal quotation, giving it the opportunity to renew its current coverages.  This is established by the conduct of the parties' relationship for nearly twenty years. In conformity with this duty, it was Nabors practice to mail out the offer of renewal to the insured shortly after it was received in his office. [Nabors Depo. p.42.] Likewise, the evidence indicates that RPS only mailed the offer to Nabors, and not to the insured, relying on Nabors to forward it to the Plaintiff in this action. [Jackson Depo. p.9, 10.]  Having found the existence of a duty, the Court must consider the issue of breach.

Nabors contends that, although he was subject to this duty of care, there was no breach and the Plaintiff must therefore fail in this action.  Relying on a line of Kentucky cases that discuss the

"mailbox rule," Nabors contends that upon his showing that the notice was mailed, a presumption arises that the notice was received by the Plaintiff, and consequently, he is entitled to summary judgment. However, for the presumption to arise, the issue of mailing must be supported by some evidence. Haven Point Enterprises, Inc., v. United Kentucky Bank, Inc., 690 S.W.2d 393 (Ky 1985), is a Kentucky case in which a foreign corporation sought relief from a default judgment, arguing that it had not received service of process through the Kentucky Secretary of State. Id. at 394. In Haven Point, the Secretary of State forwarded a summons and complaint by certified mail pursuant to KRS 454.210 and a return was made stating that the Secretary had not received the return receipt as requested, or the undelivered letter. The court reviewed evidence in the form of an affidavit from the Secretary of State stating that the Secretary placed in the mail a summons and a copy of the complaint and that no receipt or returned mail was ever received. Id. At 395.

Likewise, in Pence Mortgage Co., v. Stokes, 559 S.W.2d 500 (Ky.App. 1977), the court addressed the presumption of mailing, and found that the presumption must be supported by substantial evidence, which, in that case, included that the

> . . . mailing occurred in the normal course of business and was accomplished by first-class mail. The notices of cancellation were prepared in quadruplicate by a computer and contained the correct addresses for both the appellant and the appellees, Stokes. The additional address of the Hopkinsville insurance agent was contained on the cancellation notice, and there is proof in the record that he received his copy of the cancellation notice.

Id. at 507. In the instant matter, Nabors has no postage receipt, no return receipt, no indicia of mailing other than the mere assertion that, according to his normal business practice, he mailed the renewal quotation to the insured upon its preparation in his office. [Nabors Depo. P. 42.] This evidence does not rise to the level of evidence required to create the presumption. In the alternative,

6

Nabors contends that any breach was cured when the offer was faxed to the insured on December 8, 2004.  However, the deposition of Fred Jackson, with RPS, testified that he would have been unable to bind simply upon request of Nabors, as the policy had already lapsed. [Jackson, Depo. P. 11.] For insurance to be put in place, Jackson stated that a new application would have needed to be completed and forwarded for review. [Jackson Depo. P. 11.]

Finally the Defendants argue that the Plaintiff cannot prove Defendants' negligence without the aid of expert testimony, as the issue of negligence is not so apparent that a lay person with general knowledge would recognize its existence. [Record No. 21.]  In support of this contention, the Defendants cite the Court to the case of Thomas v. Yost Legal Group, 2005 WL2174430 (Ky. App. 2005), an unreported Kentucky case.  However, Thomas was a legal malpractice action in which the issue was the attorney's professional assessment of the law. Id. at. 4.  In that case, the Court found that an expert's testimony was required to establish a breach of the standard of care.

Stephens v. Denison, 150 S.W.2d 80 (Ky.App. 2004), was a legal malpractice claim against an attorney for failure to convey a plea offer until after the offer had expired.  In that matter, the Court did not believe expert testimony was required to show negligence where the negligence is so apparent that a layperson with general knowledge would have no difficulty recognizing it.  In the instant action, Nabors assumed a duty to forward offers of renewal to the Plaintiff prior to the policy lapsing.  There is no showing that absent Nabors' actions, the insured would otherwise receive the offers.  He contends that the offer was properly mailed, and the Plaintiff states that they never received it within the time for renewal.  Negligence in this case, if it exists, is not determined through the use of highly specialized or technical knowledge possessed within the minds of a few. Negligence, if it exists, arises from Nabors' alleged failure to forward the renewal offer to the

insured within the appropriate time period.  Such an inquiry does not require the testimony of an expert, but will require that the trier of fact consider the evidence offered by Nabors, Lincoln and Coburn, and weighing the credibility of the witnesses, determine whether Nabors breached his duty of care.

Therefore, for the reasons stated herein, the Court believes a question of fact exists regarding whether Nabors complied with his duty under the circumstances, and the matter must be resolved by the trier of fact.  For the reasons stated herein, the Defendant's motion for summary judgment [Record No. 21] will be DENIED.

<u>CONCLUSION</u>

Therefore, for the reasons set forth above,

IT IS ORDERED HEREIN AS FOLLOWS:

(1)     The Defendant's motion for summary judgment [Record No. 21] be, and the same hereby is, DENIED.

Signed January 18, 2007.



Signed By:
*Edward B. Atkins*
United States Magistrate Judge

Date of entry and service: